SOUTHERN PACIFIC COMPANY, Successor and Assign of Texas and New Orleans Railroad Company, Appellant,

v.

Ruth MATTHEWS, et vir, Appellees.

No. 20988.

° United States Court of Appeals
Fifth Circuit.

Aug. 5, 1964.

Rehearing Denied Sept. 24, 1964.

Warren G. Moore, Tyler, Tex., Ben G. Sewell, Houston, Tex., for appellant, Mc- Gregor, Sewell, Junell & Riggs, Houston, Tex., of counsel.

Robert Fairchild, Center, Tex., Jack Flock, Tyler, Tex., for appellees, Ramey,

Brelsford, Hull & Flock, Tyler, Tex., Mc-Daniel, Hunt & Fairchild, Center, Tex., of counsel.

Before HUTCHESON, PRETTY-MAN * and JONES, Circuit Judges.

JONES, Circuit Judge.

 Ruth Matthews and her husband, L. D. Matthews, recovered judgment against the appellant railroad company for personal injuries sustained when a train of the appellant struck an automobile, driven by L. D. Matthews in which his wife, Ruth Matthews, was a passenger, at a grade crossing in the town of Tenaha, Texas. The car was struck on the right side by a train composed of freight cars backing over the crossing. Ruth Matthews was sitting on the right of the front seat and was injured. The negligence of the railroad is not questioned. The only issue on this appeal is whether the evidence required a finding that L. D. Matthews was guilty of contributory negligence so as to preclude recovery by either Matthews or his wife, it being the law of Texas that contributory negligence defeats recovery and the negligence of the husband driver is imputed to the wife passenger. 40 Tex.Jur. 2d 639, Negligence § 122.

 The railroad directs our attention to the Texas statute which provides:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when: * * *

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing." Vernon's Rev.Civ.Stat. Art. 6701d, § 86.

A violation of this statute constitutes contributory negligence as a matter of law. Missouri-Kansas-Texas R.R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931. However, the Texas Supreme Court, in

the McFerrin case, decided that whether the train is "plainly visible" and in "hazardous proximity" must be determined by the "common-law test of the reasonably prudent man." Missouri-Kansas-Texas R.R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 939. There is no question in this case that the train was in hazardous proximity to the crossing, and it is undisputed that the appellees did not stop. The issue for our resolution, therefore, is whether we can say, as a matter of law, that the train would have been "plainly visible" to a reasonably prudent man. In addition, the appellant argues that the appellees breached, as a matter of law, a common law duty of reasonable care in failing to see the train which was plainly visible, but we find no necessity of considering this point.

The controlling fact question was whether the view of L. D. Matthews was obstructed so as to prevent him from seeing the train. The controlling question of law is whether the evidence on that fact question was such as to sustain the finding, implicit in the jury verdict, that there was an obstruction of the view. If this question be decided for the railroad then its motion for a judgment notwithstanding the verdict should have been granted.

Just prior to the accident, L. D. Matthews turned off a primary highway onto an unpaved road known as Menefee Street. The crossing where he met the train is on this street between the highway and his home. He was familiar with the crossing. The railroad was elevated approximately four feet above the elevation of the street at the approach to the crossing. The street ran north and south and the Matthews car was traveling north. The track ran east and west and the train which struck the Matthews car was moving west. There was a house, referred to as the Parker house, thirty feet from and east of the street and 170 feet from and south of the crossing. Between the house and the track were some trees, a junked trailer and three junked

* Senior Circuit Judge of the District of Columbia Circuit, sitting by designation.

cars. Nineteen feet from the crossing there was a railroad warning cross which was not equipped with warning lights.

The train consisted of fifteen cars and a caboose being pushed by an engine. The first railway car to reach the crossing, and consequently the one which struck appellees' car, was a gondola. The estimates of the speed of the train ranged from six to twenty miles an hour. It had rounded a curve 740 feet from the crossing and was traveling down a straightaway, into Tenaha. There was a lookout sitting on the gondola. The engineer did not blow the whistle nor did he ring the bell as he approached the crossing.

L. D. Matthews testified that as he turned onto Menefee Street leading to the crossing he was traveling between eight and ten miles an hour. It was, according to his testimony, a cold day with drizzling rain, a little sleet and a little snow. The windows in the car were rolled up and the heater and defroster were on. Both windshield wipers were working and visibility out the front was unobstructed. There was no evidence that the right front seat window was fogged up, or that there was any obstruction there. He testified that he looked to his left and right three times before driving onto the track. The first time he looked he was approximately seventy-five feet from the track and he failed to see a train. His view was obstructed, he testified, by the house, the old wrecks behind the house, and some sweet gum bushes. At one point in his testimony he estimated the height of the bushes to have been between fifteen and twenty feet, and at another point to have been between twenty-five and thirty feet high. The second time he looked, still traveling between eight and ten miles an hour, he testified that he was about thirty-five feet from the track and again the sweet gum bushes and the old junked cars obstructed his view. He also testified that a chicken house was behind the main house, as well as two trees.

The third time appellee looked, he testified that he was not traveling over four miles an hour and was approximately fifteen feet from the crossing. He testified that he could see thirty, forty, fifty feet down the track but saw no train and hence proceeded onto the track. There are two tracks crossing Menefee Street at this point. The train was on the south track, or the one nearest the appellees' car as they approached. As the car came upon the south track, Mrs. Matthews screamed "Train!" Mr. Matthews stopped, not realizing where the train was. When he saw it, it was eight feet from him. His motor having stalled, there was no way that he could avoid the collision.

L. D. Matthews testified that the bushes were fifty feet from the road along the right of way. When he looked the last time he could not see them because, he said, the car was in a low position just before ascending the raised crossing. Also he had his head up against the top of the car when he looked, in an attempt to get a better view of the tracks. He testified that he could see out of the window but saw no train.

The appellant's witnesses testified to the absence of any obstruction to a view of the tracks from a vehicle approaching, as were the appellees, from the south on Menefee Street. The conflict thus created might normally result in a fact issue to be resolved by the verdict of a jury. But we can disregard the oral testimony of the witnesses for the railroad as to the location and character of obstructions and as to visibility down the track. Considering only the testimony of the appellees and their witnesses, and the undisputed proof as to the physical layout, the inescapable conclusion is that had L. D. Matthews looked, as the law required, he would have seen the approaching train in time to have stopped before reaching the tracks.

It was the testimony of L. D. Matthews that the junked automobiles and other obstructions were not closer than thirty to forty feet to the track. J. D. Parker, owner of the house and property south of the railroad and east of Menefee Street, was called as a witness for the appellees. It was his testimony that none of the junked automobiles or other obstructions were on the right of way of the railroad,

thus placing the obstructions, by the testimony of this witness for the appellees, a distance of forty-five to fifty feet south of the track.

Mrs. Matthews testified that she looked to her right when they reached the bottom of the rise to go over the crossing and could not see the track because the bushes along the right of way were so thick. J. D. Parker testified to the thickness of the bushes at the time of the accident, and also testified that they were low bushes reaching a height of five feet at a distance of a hundred feet down the track. He testified that at a distance of twenty feet from the crossing a motorist could look to his right and see for a distance of 225 feet down the track. There was no other helpful testimony about obstructions to vision.

■ We have already noted that the level of the street, until within twelve to fifteen feet of the track, was four feet, more or less, lower than the crossing. The cars of the train were at least eight and perhaps ten or twelve feet above the elevation of the track. The appellant introduced a panoramic photograph which the cameraman testified was taken at a distance of fifty feet from the crossing. At this point there is a clear view of the track for at least 250 feet. In any event, at twenty feet from the track the photograph demonstrates what is clear from the testimony of Parker, that at this distance the appellees had a clear view of that portion of the tracks on which the train was traveling. Testimony which is at variance with physical facts is no evidence. Deitz v. Greyhound Corporation, 5th Cir. 1956, 234 F.2d 327, cert. den. 352 U.S. 918, 77 S.Ct. 218, 1 L.Ed.2d 124; Geigy Chemical Corporation v. Allen, 5th Cir. 1955, 224 F.2d 110; Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995, 1002. There is no dispute that at the speed he was traveling, Mr. Matthews could have stopped within twenty feet. It was his testimony that he could have stopped within two or three feet.

■ The evidence was such as admits of no conclusion but that the approaching railway cars would have been plainly visible, prior to and at the time they were in hazardous proximity to the crossing, to a reasonably prudent man exercising ordinary care for his own safety. In other words, and we repeat, if Matthews had looked he must have seen the train in time to have stopped and avoided the collision. Thus, by failing to so stop within the statutory zone of fifty to fifteen feet, Matthews violated the statute and was guilty of contributory negligence as a matter of law. Lackey v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 225 S.W.2d 630. There was no proper issue for the jury and the motion for a judgment notwithstanding the verdict should have been granted. Fort Worth & D. Ry. Co. v. Barlow, Tex.Civ.App., 263 S.W.2d 278; Bollinger v. Missouri-Kansas-Texas Railroad Co., Tex.Civ.App., 285 S.W.2d 300.

The judgment for the appellees is reversed and the cause is remanded for the entry of a judgment notwithstanding the verdict.

Reversed and remanded.