David STEWART, Clerk, Hart County Court, et al., Appellants,

v.

Joe G. BURKS et al., Appellees.

Court of Appeals of Kentucky.

Nov. 20, 1964.

Davis Williams, Munfordville, for appellants.

Huddleston & Huddleston, Horse Cave, for appellees.

CLAY, Commissioner.

This action was brought by three qualified electors of a school district division against the Hart County Clerk to enjoin the latter from placing a nominee's name on the official school ballot for the election to be held November 3, 1964. The relief requested was granted by the circuit court and the judgment was affirmed by order of this Court dated October 15, 1964. We document the reasons for our decision.

█ We are first confronted with a procedural problem. The circuit court dismissed the proceeding initiated by the electors but permitted the intervention of an opposing candidate, appellee Branstetter. The latter adopted the original complaint and the judgment was entered on his motion. Appellants contend the court erred in permitting the intervention. It is our opinion the trial court improperly dismissed the complaint of the plaintiff electors, and

even if the intervention of the opposing nominee had not been permitted, the requested relief should have been granted.

The trial court dismissed the complaint of the electors on the ground that they had no standing to prosecute a proceeding of this nature, relying upon authorities holding that *primary election contests* can only be prosecuted by a candidate for the office and *not by a citizen and voter*. Those authorities are Rose v. Epperson, 272 Ky. 765, 115 S.W.2d 336; Davis v. Stahl, 287 Ky. 629, 154 S.W.2d 736; Brandenberg v. Hurst, 290 Ky. 592, 162 S.W.2d 223. We do not believe those cases pertinent because this is not a primary election contest.

There is no statutory provision authorizing any particular party to question by suit a nominating petition for the office of school board member. Consequently we resort to general principles in determining what parties may properly prosecute such an action.

Although there is a conflict of authority, "the preponderance of authority is that where the question is one of public right and the object of mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced * * *." 35 Am.Jur., Mandamus, section 320 (page 73).

Kentucky has generally adopted this view. Louisville Home Telephone Co. v. City of Louisville, 130 Ky. 611, 113 S.W. 855, 859; Gay v. Haggard, 133 Ky. 425, 118 S.W. 299, 301.

In Kentucky Utilities Co. v. Ginsberg, 255 Ky. 148, 72 S.W.2d 738, we quoted from the above authorities and allowed a suit for mandamus by citizens and taxpayers to enjoin the mayor and the board of commissioners of Middlesboro from executing a loan agreement with the United States. The claim was that the mayor and board failed to subject the ordinance to a referendum as required by statute. We held that

a resident, voter, and citizen of a town had the right to bring mandamus against these city officials to require them to follow the requirements of the statute—to discharge their public duty for the benefit of the public.

In Utz v. City of Newport, Ky., 252 S.W. 2d 434, though we decided that the plaintiff taxpayer did not have the legal capacity to maintain an action to compel an election, we proceeded to decide the case on its merits as if a proper judicial controversy had been initiated.

Upon reason and authority it seems that the matter, in the absence of a controlling statute, is one of sound judicial policy. In a proceeding such as the one before us, no statute specifies who may bring such a suit. We believe the public interest in the subject matter is such that any voter or citizen who would be affected, though not specially, has standing in court to question the sufficiency of the nominating petition involved in this case. It may be observed that if the *right to bring the action* was limited to another nominee, no remedy would exist if only one person sought the office. It is therefore our opinion that the original plaintiffs had the right to maintain the action.

█ No one would deny the right of another nominee for the same office to question a nominating petition. The court could properly, as was done here, allow him to intervene under CR 21 and 24.02. Appellants' complaint is that the intervention was untimely because not permitted until the entry of judgment. We have recognized that intervention *after* judgment may properly be allowed. Monticello Electric Plant Board v. Board of Education, Ky., 310 S.W.2d 272. Since the intervenor was presenting no new claim, and was adopting the original complaint in which he had a real interest, the trial court did not commit error in permitting him to be made a party.

█ The principal controversy involves the question of whether the nominat-

ing petition of appellant Davis was signed by a sufficient number of qualified electors. The parties assumed the number required was twenty, under KRS 118.080(2). It was established that several electors had not only signed the nominating petition of appellant Davis but had also signed the petition of his opponent, appellee Branstetter. If the persons who signed both petitions can be counted for *neither* nominee, then the petition of appellant Davis had less than twenty qualified signers. On the other hand, if certain persons signing both petitions may be counted for the petition filed first, which was that of appellant Davis, then his petition met the legal requirements. The difficulty is caused by amendments to the governing statutes.

Prior to 1964, KRS 160.220 was the controlling statute governing the nomination of members of boards of education; and it provided (1) that fifty legal voters of the county school district division sign the petition for each candidate, and (2) that "no person shall sign more than one petition". We construed this latter provision to mean that a signer of two petitions could not be counted on the second petition filed, but that his signature on the first petition would not be invalidated. Huff v. Black, 259 Ky. 550, 82 S.W.2d 473; Huie v. Jones, Ky., 362 S.W.2d 287.

In the Huff case it was pointed out that the language in KRS 118.080, which declared that the signer of more than one petition shall not be counted on *either,* was not applicable since KRS 160.220, not KRS 118.080, was the governing statute.

In 1964 both KRS 160.220 and KRS 118.080 were amended. The latter statute required the signatures of twenty qualified electors (whereas old 160.220 had required fifty), and it also provided: "If any person joins in nominating, by petition, more than one nominee for any office to be filled, he shall not be counted as a petitioner for either nomination". If KRS 118.080 applies, then appellant Davis' nominating petition lacks sufficient valid signatures because the names of those signing both petitions must be stricken from his.

It is appellant Davis' contention that old KRS 160.220 (and the cases construing it) still applies to the extent that he does not lose the duplicate signers since his petition was filed first. The argument is based on the proposition that the amendment to KRS 160.220 in 1964 failed to incorporate the provisions of KRS 118.080 (even though appellants inconsistently take the position that KRS 118.080(2) must apply insofar as the *number* of signers is concerned).

KRS 160.220, in its entirety as amended in 1964, is as follows:

"All elections for members of boards of education shall be by secret ballot. The ballot shall be on a separate sheet from all other ballots used in any election. The county clerk shall cause to be printed on the ballot the names of legally eligible candidates who have filed with the clerk *a petition as provided in KRS 118.010.*" (Our emphasis)

The reference to KRS 118.010 is obviously a mistake. That section of the statutes is solely introductory in nature, doing no more than defining "election" and providing for the application of Chapter 118. It has nothing to do with, and makes no reference to a nominating "petition".

On the face of it, the intended reference must have been to KRS 118.080. That is the section which sets forth the requirements for nominating petitions. Of significance is the fact that the 1964 amendments to both KRS 160.220 and 118.080 were made in the same bill (H.B. 27). More significantly, the language in amended KRS 160.220: "* * * who have filed with the clerk a petition as provided in KRS 118.010", was the substitute for, and repealed, the prior provisions of KRS 160.220 relating to the number of legal voters required on a petition and the requisites of signing. Unless KRS 118.080 governs this phase of the procedure, there remains in our law no prescribed method by which a person may be-

come a nominee for the office of member of the school board.

It therefore seems abundantly clear that the statutory reference was a numerical error, which this Court may take cognizance of and correct to carry out the purpose and intent of the legislature. 82 C.J.S. Statutes § 342; County Board of Education of Daviess County v. Fiscal Court, 221 Ky. 106, 298 S.W. 185; State Property & Buildings Commission v. Hays, Ky., 346 S.W.2d 3.

Since the invalidation of duplicate signatures on nominating petitions such as those involved in this case is now controlled by KRS 118.080, the trial court properly found that the petition of appellant Davis did not contain sufficient valid signatures.

As heretofore ordered, the judgment is affirmed.